UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                    )
LAUREN SHIEBLER,                    )
                                    )
                  Plaintiff,        )
                                    )
         v.                         )        CIVIL ACTION
                                    )        No. 24-10839-WGY
MARTIN J. O'MALLEY, Commissioner    )
of the Social Security             )
Administration,                     )
                                    )
                  Defendant.        )
_____)
```

YOUNG, D.J.                                    December 17, 2024

**MEMORANDUM OF DECISION**

## I.    INTRODUCTION

The plaintiff Lauren Shiebler ("Shiebler") seeks to reverse the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her disability benefits under Title II of the Social Security Act.  The Commissioner cross-moves to affirm the decision.

In the decision challenged here, Administrative Law Judge Sean Teehan (the "Hearing Officer") concluded that Shiebler had the Residual Functional Capacity ("RFC") to perform other jobs involving light work as defined in 20 C.F.R. § 404.1567(b), and thus Shiebler was not disabled in the relevant period.  Admin. R. Social Sec. Proc. ("R.") 49-53, ECF No. 9.

In making this RFC determination, the Hearing Officer relied on the exam findings of Shiebler's treating doctor, Dr. Jonathan Zurawski, and the opinions of State Agency consultants Dr. Subbiah Doraiswami, Dr. Michelle Hoy-Watkins, Dr. John Fahey, and Dr. Lois Condie. Id. at 50-51. The Hearing Officer rejected the assessment of Dr. Mary Connelly and Physician Assistant John Sullivan. Id. at 51. The Hearing Officer also found that Shiebler's testimony was not sufficient to prove alleged additional limitations, such as being required to rest more than 25% per workday. Id. at 46, 50, 730.

The Hearing Officer then relied on the testimony of Vocational Expert Brian Womer (the "VE") to conclude that there existed light work jobs in the national economy that Shiebler could perform. Id. at 52.

Shiebler argues that the Hearing Officer's decision was flawed because it omitted a part of State Agency psychologist Dr. Michelle Hoy-Watkins's assessment, rejected PA-C John Sullivan's report, and rejected Shiebler's self-claimed symptoms. See generally Pl.'s Br. Supp. Mot. Order Reversing Comm'r's Decision ("Pl.'s Mem."), ECF No. 11; Pl.'s Reply Br., ECF No. 18. The Commissioner argues that the Hearing Officer made no material error of law, and that the decision was based on substantial evidence. Def.'s Mem. Supp. Mot. Affirm Comm'r's Decision ("Def.'s Mem."), ECF No. 16.

This Court **DENIES** Shiebler's motion to reverse and **GRANTS** the Commissioner's motion to affirm.

## II.  PROCEDURAL HISTORY

On June 7, 2021, Shiebler filed a Title II disability benefits claim.  R. at 232-34.  She alleged physical disability resulting from her multiple sclerosis. Id. at 235, 256.

The Social Security Administration ("the Administration") initially denied Shiebler's claims on January 27, 2022, id. at 122, and again on reconsideration on September 6, 2022, id. at 129.  Shiebler requested a hearing on September 14, 2022, id. at 134, which was held before the Hearing Officer on December 15, 2022, id. at 57.  The Hearing Officer denied the claim on April 5, 2023.  Id. at 38, 53.  Shiebler subsequently filed an appeal with the Appeals Council, which denied the request for review on February 6, 2024.  Id. at 1.

Shiebler filed a complaint before this Court on April 2, 2024, Compl., ECF No. 1, and a Motion for Order Reversing Commissioner's Decision on July 2, 2024, Pl.'s Mot. Order Reversing Comm'r's Decision, ECF No. 10; Pl.'s Mem.  The Commissioner filed a Motion to Affirm the Commissioner's Decision on August 7, 2024.  Mot. Affirm Comm'r's Decision, ECF No. 15; Def.'s Mem.  Shiebler filed a reply brief on August 21, 2024.  Pl.'s Reply Br.

This Court has jurisdiction under 42 U.S.C. § 405(g).

### III. FACTS

Shiebler was 37 years old at the time she applied for disability benefits in 2021.  R. at 232.  Shiebler had started to have left leg pain in 2019 and was later diagnosed with multiple sclerosis.  Id. at 395.

At the time of application, Shiebler alleged that she had a limited ability to work because of her "1. [m]ultiple sclerosis 2. [h]erniated discs in [her] lower back [and] 3. [c]ompressed disc in [her] lower back."  Id. at 256.  Shiebler received cognitive testing, speech therapy, and cognitive therapy due to her multiple sclerosis.  Id. at 259.

Shiebler worked as a registered nurse and telehealth nurse at Boston Medical Center from 2005 until October 30, 2020.  Id. at 16, 25, 67-69.  While at Boston Medical Center, Shiebler worked for nine hours per day, three days per week.  Id. at 257. Prior to the hearing at issue, Shiebler last worked in October 2022, as a shop assistant in a clothing store called Strand the Boutique LLC.  Id. at 64-67, 240.

At the hearing on December 15, 2022, Shiebler testified that she resigned from her work as a nurse because she felt extreme fatigue and numbness and tingling on her left side, and had muscle spasms, back pain, and mind fog causing her difficulty with word finding.  Id. at 72.  She also testified that the lumbar micro discectomy she received in October 2021

alleviated some of her back pain.  Id.  She added that she
resigned from the clothing shop due to her impairments, because
she was "feeling really fatigued" after a four-hour shift,
experiencing more spasms in her hands when grasping, tagging,
and lifting items, and could not sit for a long time.  Id. at
67.

   At the same hearing, the VE testified about whether an
individual with the age, education, and work experience of
Shiebler would have jobs available to her in the national
economy.  Id. at 93-97.  The VE assessed that for a person with
the RFC described in the State Agency doctors' function reports,
there are light work jobs available in the national economy.
Id. at 95-96.  Specifically, the VE observed that there were
three unskilled light work jobs that such a person could
perform: mail sorter or mail clerk, office helper, and small
parts assembler.  Id. at 96.

   The VE also testified that there would be no jobs available
in the national economy for an individual who has the RFC and
additional limitations described in Physician Assistant John
Sullivan's function report.  Id. at 97.

## IV.  THE HEARING OFFICER'S DECISION

### A. Legal Standard

   To obtain Social Security Disability Insurance benefits, an
applicant must show that she is disabled.  42 U.S.C. §

423(a)(1)(E).  Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  The Commissioner applies a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 416.920; see also Goodermote v. Secretary of Health & Hum. Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).  The claimant bears the burdens of production and persuasion at steps one through four of this analysis.  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001); Clarification of Rules Involving Residual Functional Capacity Assessments, 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003).

First step.  The first step of the sequential evaluation process is determining whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity is defined as earnings from a work setting exceeding an amount that the Administration determines each year.  20 C.F.R. §§ 404.1520(a)(4)(i), 404.1574(b).

Second step.  At the second step, the hearing officer determines whether impairments are "severe."  20 C.F.R. § 404.1520(a)(4)(ii).  An impairment or combination of impairments

is severe if it significantly limits an individual's ability to engage in basic work activities.  20 C.F.R. § 404.1520(c).

Third step.  At step three, the hearing officer assesses whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(d), 416.925, 416.926. If the claimant's impairment is of such severity, the claimant is disabled.  20 C.F.R. § 404.1525(a)(4)(iii).  If it is not, the analysis proceeds to the next step.  20 C.F.R. § 404.1520(e).

Fourth step.  If a claim does not meet the severity of a listed impairment at step three, the inquiry does not end.  Id. Instead, the hearing officer proceeds to step four and assesses the RFC of the claimant.  Id.  RFC determinations must consider all the claimant's impairments, including severe and non-severe impairments.  20 C.F.R. § 404.1545(a)(2).  The hearing officer then uses the RFC determination to decide whether the claimant can return to past relevant work.  20 C.F.R. § 404.1520(e).

Fifth step.  If the claimant's RFC would not allow her to return to past relevant work, the hearing officer continues to step five of the sequential evaluation process.  20 C.F.R. § 404.1520(a)(4)(v).  At step five, the burden of proof shifts to the Administration to establish that a person of the same age,

education, work experience, and RFC could do work that exists in
significant numbers in the national economy.  20 C.F.R. §§
404.1560(c)(2), 404.1512(b)(3).  If the hearing officer finds
that the claimant can do work that exists in significant numbers
in the national economy given her RFC, age, education, and work
experience, then the hearing officer will find the claimant not
disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1566(b).  If the
claimant can do light work, the Administration would determine
that he or she can also do sedentary work, unless there are
additional limiting factors such as loss of fine dexterity or
inability to sit for long periods of time.  20 C.F.R. §
404.1567(b).

### B. Summary of Findings

At step one, the Hearing Officer found that Shiebler had
not engaged in substantial gainful activity since her alleged
onset date of October 30, 2020.  R. at 44.

At step two, the Hearing Officer found that Shiebler had
the "severe" impairments of lumbar degenerative disc disease
status-post microdiscectomy, multiple sclerosis, mood disorder,
anxiety disorder, and neurocognitive disorder, which
significantly limit her ability to perform basic work
activities.  Id.

At step three, the Hearing Officer found that Shiebler did
not have an impairment or combination of impairments that meets

or medically equals the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1.  Id. at 46-47.

At step four, the Hearing Officer found that Shiebler had the RFC to perform light work.  Id. at 49.  The Hearing Officer determined that Shiebler could "lift and/or carry 20 pounds occasionally and 10 pounds frequently"; "can stand and/or walk for four hours" and "sit for six hours" in an eight-hour workday over a forty-hour workweek; is "occasionally . . . able to push and pull with the left lower extremity"; can "occasionally climb stairs, stoop, kneel, crouch and crawl"; and can "understand and carry out instructions for simple routine tasks [and] maintain concentration, persistence and pace in the performance of these tasks for two-hour increments."  Id.  Finally, the Hearing Officer found that Shiebler "presents as alert and oriented with intact memory and fund of knowledge," is "able to relate in a clinical setting," and is "able to care for her personal needs, grooming and hygiene."  Id. at 50.

At step five, the Hearing Officer found that although Shiebler is unable to perform her past relevant work as a registered nurse and telehealth nurse, there are jobs that exist in significant numbers in the national economy that Shiebler can perform.  Id. at 52.  Such jobs include: mail sorter or mail clerk, office helper, and small parts assembler.  Id.  In making

this determination, the Hearing Officer relied on the VE's testimony.  Id.  The Hearing Officer found that a person with an RFC as described above, in this case Shiebler, would be able to perform unskilled light work, including the three jobs mentioned.  Id.

Therefore, the Hearing Officer concluded that Shiebler was not disabled during the relevant period.  Id.

## V.   ANALYSIS

### A. Standard of Review

The Court has the authority to affirm, modify, or reverse the decision of the Commissioner.  42 U.S.C. § 405(g).  To remand, "the Court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim."  William S. v. O'Malley, No. 24-00143-LDA, 2024 WL 4123488, at *2 (D.R.I. Sept. 9, 2024) (citing Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001)).  The findings of the Commissioner as to any fact, "if supported by substantial evidence, shall be conclusive[.]"  42 U.S.C. § 405(g).

Courts review the factual findings of hearing officers based on the substantial evidence standard.  Ortiz v. Secretary of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains

'sufficien[t] evidence' to support the agency's factual
determinations." Biestek v. Berryhill, 587 U.S. 97, 102 (2019)
(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229
(1938)).  Substantial evidence need only be enough that a person
of "a reasonable mind, reviewing the evidence in the record as a
whole, could accept it as adequate to support [the] conclusion."
Id.; see also West v. Berryhill, No. 17-1170, 2017 WL 6499834,
at *1 (1st Cir. Dec. 11, 2017) ("[T]he court considers the ALJ's
decision as a whole when determining whether substantial
evidence support[s] the ALJ's findings.").

     The substantial evidence standard is more deferential to
the administrative agencies than even the clearly erroneous
standard.  See Dickinson v. Zurko, 527 U.S. 150, 153 (1999).
"Substantial evidence is 'more than a mere scintilla,' and means
only 'such relevant evidence as a reasonable mind might accept
as adequate to support a conclusion.'" Biestek, 587 U.S. at 97
(quoting Consolidated Edison Co., 305 U.S. at 229).

     The Court will not reverse the decision if the error is
"harmless." Colon v. Saul, 463 F. Supp. 3d 66, 75 (D. Mass.
2020) (quoting Perez Torres v. Secretary of Health & Hum.
Servs., 890 F.2d 1251, 1255 (1st Cir. 1989)).

     **B. Discussion**

     The Hearing Officer's decision on steps one through three
is not disputed.  See generally Compl.; Pl's Mem.  It is

undisputed that Shiebler could no longer perform her past work
due to her impairments.  Def.'s Mem. 1; Pl.'s Mem. 2.  Shiebler
challenges steps four and five, regarding the Hearing Officer's
RFC findings.  Pl.'s Mem. 3, 9.

      Shiebler argues that the Hearing Officer's RFC analysis was
flawed for two reasons.  Id.  First, Shiebler claims that the
Hearing Officer failed properly to evaluate the opinion of the
State Agency's psychological consultant who participated in the
reconsideration process, Dr. Michelle Hoy-Watkins.  Id. at 3, 5.
Shiebler argues that, despite finding Dr. Michelle Hoy-Watkin's
opinion persuasive, the Hearing Officer failed to include every
limitation described therein in his RFC or to explain why some
were excluded.  Id. at 5-6.  Second, Shiebler alleges that the
Hearing Officer erred by failing to account for the "total
limiting effects" of Shiebler's impairments.  Id. at 9.  More
specifically, Shiebler argues that the Hearing Officer failed
properly to evaluate Physician Assistant John Sullivan's report,
and Shiebler's self-described limitations.  Id. at 16, 18.

### 1. Shiebler's Claim that The Hearing Officer Disregarded Dr. Hoy-Watkins's Opinion Is Unpersuasive.

  Shiebler claims that the Hearing Officer erred by disregarding
Dr. Hoy-Watkins's report when assessing her RFC.  Pl.'s Mem. 5-
9.  Contrary to Shiebler's claim, the Hearing Officer considered
Dr. Hoy-Watkins's report explicitly when assessing Shiebler's

RFC.  R. at 45, 48, 50.  The Hearing Officer determined that, considering Dr. Hoy-Watkins's report, Shiebler had mild social interaction limitations, but only omitted the limitation when asking the VE hypothetical questions.  R. at 48, 95-97.  The Court holds that this omission was harmless.

> ### i. The Hearing Officer's Decision that Shiebler Has Mild Social Interaction Limitations Was Based on Substantial Evidence.

Shiebler's first argument is that the Hearing Officer erred by disregarding part of Dr. Hoy-Watkins's function report. Pl.'s Mem. 5-9.

On August 10, 2022, Dr. Michelle Hoy-Watkins, a State Agency consultant, evaluated Shiebler for her mental RFC during the reconsideration process for Shiebler's disability claim.  R. at 114-15.  In the determination report, Dr. Hoy-Watkins added a comment in the "additional opinion" section, stating, "The claimant retains the ability to understand, remember and follow simple instructions with adequate CPP.  The claimant can adapt to predictable changes and work-related stressors.  **The claimant can engage in brief and superficial interactions.**"  Id. at 115. The Hearing Officer did not mention the above comment in his decision.  Id. at 38-56.

Shiebler claims that this last sentence of the comment ought be construed to mean that Shiebler's ability to interact with others is "limited to" only brief and superficial

interactions.  Pl.'s Mem. 5-9.  Shiebler also argues that this comment is essential medical evidence that she has a mental impairment affecting her social interactions, making the Hearing Officer's decision flawed.  Id. at 6-9.  Shiebler alleges that the Hearing Officer made legal errors by (1) disregarding such limitation when accounting for her RFC, (2) not consulting on the effect of the limitation with the VE, and (3) not explaining the reason for omitting the limitation or reason for rejecting Hoy-Watkins's opinion in the Hearing Officer's decision.  Id. at 3-9.

Regarding Shiebler's social interaction limitations, the Hearing Officer found that she has "a mild limitation."  R. at 48.  The term "mild limitation" indicates that one's functioning in the designated area independently, appropriately, effectively, and on a sustained basis is "slightly limited."  20 C.F.R Part 404, Subpart P, Appendix 1, 12.00(F)(2)(b).  The Hearing Officer reasoned that:

> The claimant's speech is normal and there is no
> evidence of any language deficits.  She is described
> as cooperative in a clinical setting.  In her function
> report dated May of 2022, the claimant stated that she
> tries to attend her children's sporting events and
> will occasionally go out to dinner. She also reported
> seeing her in-laws and her father on a regular basis.
> In addition, she reported being excited about a family
> trip to Italy and testified enjoying this trip where
> she was able to attend several tourist attractions
> such as the Sistene [sic] Chapel, doing walking tours
> and going to museums in Rome and Florence, and taking
> water taxis in Venice.

R. at 48.

The Hearing Officer's determination is consistent with the record.  During the hearing, Shiebler testified that she travels with her family, id. at 80, went on a trip to Italy for her anniversary for around six days in November 2022, id. at 80-82, and on another trip to Vermont in 2021 with four other families before her lumbar micro discectomy surgery, id. at 83-84.  In her two self-written function reports, she indicated that she participates in social activities, that she goes out for either lunch or dinner with others once or twice a month, and that she attends her kids' sporting events.  Id. at 273, 299.

Shiebler did not claim any difficulty in interacting with other people in her initial application for disability benefits, in her appeal for reconsideration of her initial claim, in her request for a hearing, or in the hearing with the Hearing Officer.  See id. at 57-98, 127-28, 256, 314-15.  Shiebler's attorney was given the opportunity to ask the VE about social interaction limitations but did not ask any questions.  See id. at 97-98.  This Motion is the first instance in which Shiebler is specifically claiming limitation in interacting with other people.  Pl.'s Mem. 5-9.

According to Shiebler's neuropsychological testing done by Dr. Lindsay A. Barker on January 12, 2021, Shiebler had

"[n]ormal, well-related [behavior], [and] good eye contact," and
her speech was "[f]luent, prosodic, normal rate."  R. at 375.
Shiebler had no word finding problems, and her thought process
was logical, goal-directed, and processing at a mildly slow
speed.  Id.  Shiebler was "alert and oriented," and her
"attention was sustained throughout the clinical interview."
Id.

In January 2022, Dr. Lois Condie, a State Agency
psychological consultant, evaluated Shiebler for medically
determinable impairments and severity.  Id. at 101-02.  Dr.
Condie found that Shiebler's limitation in her ability to
"Interact with others" is "Mild."  Id. at 102.  For Shiebler's
mental RFC, Dr. Condie assessed that Shiebler had no social
interaction limitations.  Id. at 105.

In the second state function report, Dr. Hoy-Watkins found
that Shiebler's limitation in her ability to "Interact with
others" is "Mild," identical to what Dr. Condie determined in
the first state function report.  Id. at 102, 112.  The Hearing
Officer discusses Dr. Hoy-Watkins's assessment in his decision
by indicating that it is "persuasive," and that Dr. Hoy-Watkins
is "experienced in the evaluation of disability claims," and
that her "opinions were consistent with other significant
evidence of record, namely the claimant's response to disc
surgery, Dr. Zurawski's exam findings, the claimant's daily

activities, and the relatively conservative treatment modalities that have been employed with respect to her impairments." Id. at 50. Dr. Hoy-Watkins wrote in her psychiatric review that she reaffirmed the initial function report done by Dr. Condie. Id. at 112. She summarized that "[the Initial] Function report (5/20/22) indicates the ability to perform self-care, prepare meals, do laundry, vacuum, drive, travel alone, shop by computer, and socialize. The claimant goes out to dinner. . . ." Id. She then made her determination that "[a]t recon[sideration], additional medical evidence has been received but is consistent with the initial decision." Id. Moreover, Dr. Hoy-Watkins answered "No" to the question "Does the individual have social interaction limitations?" Id. at 115.

Given these findings and the consistency of the state function reports, the Hearing Officer's factual finding that the plaintiff has only mild limitation in interacting with others was based on substantial evidence. Id. at 48.

> ### ii. Although the Hearing Officer Omitted the Mild Social Interaction Limitation in Asking the VE Hypothetical Questions, This Does Not Constitute Legal Error.

The Court must next consider whether the Hearing Officer's disregarding Shiebler's possible mild social interaction limitation when asking the VE hypothetical questions constitutes reversible legal error.

The Hearing Officer asked the VE two hypothetical questions.  R. 95-97.  First, the Hearing Officer asked the VE whether there would be any work in the regional or national economy for a hypothetical person of the same age, education, and work background as Shiebler.  Id. at 95.  The Hearing Officer asked the VE to assume that this hypothetical person had physical and mental limitations as assessed by the Administration's second function report.  Id.  The Hearing Officer omitted mild limitation in social interactions from the hypothetical question.  Id. at 95-96.  The VE testified that such a hypothetical person would be able to perform unskilled light work such as that of a mail sorter or mail clerk, office helper, or small parts assembler.  Id. at 96.  Next, the Hearing Officer asked the VE whether there would be any work in the regional or national economy for the same hypothetical person if this person had physical limitations as assessed in Physician Assistant John Sullivan's report.  Id. at 96-97.  Again, the Hearing Officer did not include mild limitation in social interactions in the question.  Id.  The VE testified that there would be no full-time job available for such a person.  Id. at 97.

The Hearing Officer, however, did not ignore Shiebler's social interaction limitations, and gave Shiebler opportunities to discuss them.  First, after interviewing Shiebler about her

physical symptoms, the Hearing Officer inquired into her mental
difficulties by asking her twice whether she had any other
conditions that she wanted to discuss that affect her ability to
work.  Id. at 76.  Shiebler answered that she had anxiety, but
it is controlled by medication and meditation.  Id.  Shiebler
added that she had Hashimoto's and ADHD, but she also added that
she did not have any other issues that would prevent her from
working.  Id. at 76-77.  Second, before asking hypothetical
questions to the VE, the Hearing Officer asked Shiebler about
her family trip to Italy, and whether she had any difficulties
during the trip.  Id. at 80-82.  Third, Shiebler's attorney was
given an opportunity to ask Shiebler about any difficulties that
were not addressed by the Hearing Officer before the VE gave his
testimony.  Id. at 84.  During the inquiry, the attorney did not
ask Shiebler about her social interaction limitations.  Id. at
84-91.

Regardless of these opportunities, the Hearing Officer's
omission of the mild social interaction limitation from his
hypothetical questions to the VE was not material to the outcome
of the hearing and so was harmless error.  As the Commissioner
argues, any error was harmless because none of the three
occupations the VE identified requires substantial social
interaction skills.  Def.'s Mem. 13; see Freddette v. Berryhill,
No. 17-cv-672-PB, 2019 WL 121249, at *7 (D.N.H. Jan. 7, 2019)

[19]

(noting that courts "routinely find harmless error" where ALJ's hypothetical questions or RFC determination excludes a limitation that does not affect claimant's ability to perform identified work).

Of the three occupations suggested by the Hearing Officer, two of them (mail sorter and small parts assembler) are rated "8" in people skills by the Dictionary of Occupational Titles ("DOT"), which is the lowest level of human interaction required.  DOT § 209.687-026, 1991 WL 671813 (mail clerk); DOT § 706.684-022, 1991 WL 679050 (assembler, small products I).  The third job suggested by the VE, office helper, is rated "6."  DOT § 239.567-010, 1991 WL 672232 (office helper).  Level 8 work, which is described as "Taking Instructions-Helping," requires "[a]ttending to the work assignment instructions or orders of supervisor," with "[n]o immediate response required unless clarification of instructions or orders is needed."  DOT, Appendix B, 1991 WL 688701.  Level 6 work, which is described as "Speaking-Signaling," requires "[t]alking with and/or signaling people to convey or exchange information," including "giving assignments and/or directions to helpers or assistants."  Id.

It was not unreasonable for the Hearing Officer to decide that a person with possible mild social interaction limitations could perform the jobs described above.  See Simpson v. Colvin, No. 1:13-CV-168 NAB, 2014 WL 5313724, at *21 (E.D. Mo. Oct. 16,

2014) ("Level 8 interaction is compatible with an RFC limiting a claimant to only superficial contact with co-workers, supervisors, and the public . . . .  Plaintiff's claim that the Hearing Officer's RFC determination failed to account for his limited social contact therefore fails."); Sweeney v. Colvin, No. 3:13-cv-02233-GBC, 2014 WL 4294507, at *17 (M.D. Pa. Aug. 28, 2014) (collecting cases); Fredette, 2019 WL 121249, at *7.

Any mistake the Hearing Officer may have made in failing to mention Shiebler's mild social interaction limitations in his hypothetical questions to the VE was therefore harmless error.

### 2. Shiebler's Claim that The Hearing Officer Improperly Rejected PA-C Sullivan's Report Is Unpersuasive.

Shiebler also alleges that the Hearing Officer did not properly account for the medical opinion evidence of Physician Assistant John Sullivan ("Sullivan").  Pl.'s Mem. 9, 13-18. More specifically, Shiebler claims that (1) the Hearing Officer did not provide appropriate citations to the evidence, (2) the Hearing Officer did not explain how Shiebler's testimony was inconsistent with Sullivan's report, and (3) the Hearing Officer did not assess the "supportability" factor of Sullivan's report. Id. at 16-18.

The mere existence of evidence contrary to the Hearing Officer's decision "does not extinguish the substantial evidence supporting the [hearing officer's] findings."  Greene v. Astrue,

No. 11-30084-KPN, 2012 WL 1248977, at *3 (D. Mass. Apr. 12, 2012) (Neiman, M.J.) (quoting Fernung v. Astrue, No. 3:09CV00495, 2011 WL 1234784, at *10 (S.D. Ohio Jan. 26, 2011). "Plaintiff must show not only the existence of evidence in the record supporting her position but must also demonstrate that the evidence relied on by the ALJ is either insufficient, incorrect, or both." Id.

The Hearing Officer based his assessment of Shiebler's RFC on the medical record made by Dr. Zurawski, and other State Agency medical consultants. R. at 50-51. Shiebler is not challenging other evidence and has not demonstrated that other medical records are either insufficient or incorrect. Even if Sullivan's four-page report is significant medical evidence, the Hearing Officer provided sufficient reason for its rejection. Id.

### i. The Hearing Officer's Rejection of Sullivan's Report Was Based on Substantial Evidence.

Shiebler claims that the Hearing Officer did not provide an adequate explanation for rejecting Sullivan's assessment. Pl.'s Mem. 16-17. On December 2, 2022, Sullivan examined Shiebler for her functional capacity assessment. R. at 46, 731. Sullivan assessed that Shiebler could walk for two to three blocks without rest or severe pain, sit for thirty minutes at one time, stand for fifteen minutes at one time, sit and stand/walk for

two hours in an eight hour working day, needed a ten to fifteen
minute break for every thirty minutes of work, would need be
off-task for 25% or more of the time during a typical work day,
and needed to be absent from work more than four days per month.
Id. at 729-31.  Also, Sullivan assessed that Shiebler could (1)
occasionally lift ten pounds and twenty pounds, (2) occasionally
twist, stoop, and crouch, and (3) use her right upper extremity
for grasping, turning, and twisting objects, fine manipulation,
and reaching in front of her body or overhead 75% of the time.
Id. at 730.

        The Hearing Officer determined that Sullivan's assessment
was not persuasive, noting that it "reports limitations that
were not consistent with his supervising physician [Dr.
Zurawski]'s exam findings as well as the claimant's own
description of her activities." Id. at 51.  In the decision,
the Hearing Officer emphasizes that Sullivan was "working under
the supervision of Dr. Zurawski." Id. at 46.  The Hearing
Officer describes Dr. Zurawski's exam findings in detail and
provides citations to the relevant evidence. Id. at 44-46, 720-
27.  More specifically, the Hearing Officer summarizes Dr.
Zurawski's findings as follows:

        [Shiebler's] cranial nerves were intact.  Motor exam
        showed no pronator drift with mildly increased tone in
        the bilateral lower extremities.  Strength was normal
        (5/5) throughout.  Sensation was intact to light
        touch, pinprick, temperature and vibration. Reflexes

were equal and symmetric (2+) throughout.  There was
mild bilateral dysmetria on heel to shin and finger-
nose-finger movements.  There was no truncal ataxia.
Her gait was normal with respect to base and stride
and performed without assistance.  There was no ataxia
or spasticity.  She was able to stand unsupported.
Romberg was positive and there was mild difficulty on
tandem gait. Timed 25-foot walk was performed in 5.9
seconds.  The Neurologist continued the claimant on
Ocrevus infusions every six months, gabapentin and
Adderall as well as referring her for an MRI in six
months.

Id. at 46.  The Hearing Officer's summary of Dr. Zurawski's

findings is consistent with the medical record.  See generally

id. at 547-705.

Shiebler also alleges that the Hearing Officer did not

explain how Shiebler's description of her activities was

inconsistent with Sullivan's report.  Pl.'s Mem. 17.  On the

contrary, read as a whole, the Hearing Officer specified how

Shiebler's activities were inconsistent with the limitations

reported in Sullivan's report by pointing out each inconsistent

activity.  R. at 50; see Furey v. Saul, 501 F. Supp. 3d 29, 52

(D. Mass. 2020) (Burroughs, J.) (noting that it is proper for

the Court to read the ALJ's decision as a whole, and that ALJs

are not required to needlessly repeat their analysis).

The Hearing Officer summarized Sullivan's findings in his

decision:

The Physician's Assistant stated that the claimant was
able to walk 2-3 blocks at one time, to sit for thirty
minutes at one time and to stand for fifteen minutes.
The claimant would be able to perform two-hours total

> of combined sitting, standing and walking in an eight-
> hour day. . . . The Physician's Assistant stated that
> the claimant was incapable of even "low stress" work,
> that she would be off task for more than 25% of the
> workday and that she would be absent from work four or
> more days per month.

R. at 46.  The Hearing Officer describes Shiebler's activities
in several paragraphs of his decision.  The Hearing Officer
mentions that "[i]n her function report dated May of 2022, the
claimant stated that she tries to attend her children's sporting
events and will occasionally go out to dinner," and that
"[Shiebler] also reported seeing her in-laws and her father on a
regular basis."  Id. at 48.  Likewise, the Hearing Officer notes
that "[t]he claimant described being able to drive short
distances and to run short errands," and that "she can prepare
simple meals, let the dog out and care for her children," and
that she "testified that she recently went on a trip to Italy
where she visited Rome, Venice and Florence" and "indicated that
while in Italy, she was able to go on walking tours, go to
museums, see tourist attractions such as the Sistene [sic]
Chapel, and travel in water taxis."  Id. at 50.  The Hearing
Officer added that he would take "administrative notice of the
fact that such travel would also require walking and standing in
lines for security and passport checks."  Id.

　　While it might have been preferable for the Hearing Officer
to explain exactly how such activities were inconsistent with

Sullivan's findings, such an omission does not amount to a legal error or render the decision without substantial evidence. It was not unreasonable for the Hearing Officer to determine that a person who can sit and stand/walk for only two hours in an eight-hour workday would not be able to go on a week-long trip abroad that requires a seven-hour flight and walking tours, or to favor the opinion of Sullivan's supervising physician over Sullivan's own. The Hearing Officer also specifically determined, with reference to Dr. Mary Connelly's function report, that it was "not persuasive" that Shiebler could only stand and walk for a combined two hours per day, and gave reasons. Id. at 51. Shiebler is not challenging the Hearing Officer's rejection of Dr. Connelly's report, and the Hearing Officer was not required to repeat this analysis.

In sum, the Hearing Officer was within his discretion to find the limitations described in Sullivan's report unpersuasive. Considering the record as a whole, the Hearing Officer's decision to reject Sullivan's report was based on substantial evidence, and a reasonable mind could find the evidence adequate to support his conclusion. See Biestek, 587 U.S. at 102-03.

### ii. The Hearing Officer Considered the Supportability Factor in Examining Sullivan's Report.

Shiebler claims that the Hearing Officer failed to consider the "supportability" factor in rejecting Sullivan's function report.  Pl.'s Mem. 18.

In weighing medical evidence, a hearing officer must consider supportability, consistency, specialization, and other factors.  20 CFR § 404.1527(c).  "Supportability" requires the officer to grant more weight to sources which provide better explanations.  20 CFR § 404.1527(c)(3).  The hearing officer need not use the specific word "supportability" or "consistency" in his decision.  See, e.g., Angela H.-M. v. Commissioner of Soc. Sec., 631 F. Supp. 3d 1, 10 (W.D.N.Y. 2022) (finding hearing officer's discussion sufficient even where the officer "did not specifically use the words 'supportability' and 'consistency'").  "The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [the hearing officer] will give that medical opinion."  20 CFR § 404.1527(b)(3).

The Hearing Officer did not make a legal error in omitting to discuss the supportability factor explicitly when rejecting Sullivan's report.  As detailed above, the Hearing Officer's description of the relevant medical evidence is itself the

Hearing Officer's consideration of the supportability factor.
See supra section V.B.2.i.  The Hearing Officer's summarization
of the medical opinions by Dr. Zurawski, Dr. Condie, and Dr.
Doraiswami shows how Sullivan's assessment was inconsistent with
other medical records, and supports the Hearing Officer's
implied finding that these opinions were more supported by
relevant evidence than the opinions he rejected.  R. at 44-46,
51.

### 3. Shiebler's Claim that the Hearing Officer Did Not Properly Evaluate Her Statements Is Unpersuasive.

Shiebler claims that the Hearing Officer did not properly
evaluate Shiebler's own statements about her symptoms.  Pl.'s
Mem. 18-19.

The Hearing Officer examined Shiebler's alleged symptoms
and statement of daily activities.  See R. at 49-51.  The
Hearing Officer first summarized Shiebler's claimed symptoms in
this way: "Although her back pain has improved since her
surgery, she continues to have nerve pain as well as left-sided
numbness and spasms. . . . [S]he is often fatigued and must nap.
. . .  The claimant said that she has trouble sitting for long
periods."  Id. at 49-50.  The Hearing Officer determined that,
although Shiebler does have some limitations due to her
impairments, Shiebler's testimony was not sufficient to
establish "additional limitations" beyond those included in the

RFC determination, "given the medical evidence, the prescribed course of treatment, and her daily activities."  Id. at 50.

Based on Shiebler's testimony and medical records, it was not unreasonable for the Hearing Officer to find that Shiebler's self-reported symptoms did not establish additional limitations. See id. at 295-302.  The Hearing Officer was not required to take Shiebler's statements about her own condition at "face value."  Bianchi v. Secretary of Health & Hum. Servs., 764 F.2d 44, 45 (1st Cir. 1985).  Rather, the Hearing Officer weighed Shiebler's statements against other evidence in the record, including her treatment history, exam findings, and self-reported activities.  R. at 50-51.  Therefore, the Hearing Officer's weighing of Shiebler's own statements was based on substantial evidence, and the existing administrative record contains sufficient evidence to support the Hearing Officer's factual determinations.  See Biestek, 587 U.S. at 102.

**C. Summary of Discussion**

Any omissions the Hearing Officer may have made in his RFC analysis constitute at most harmless error.  The Hearing Officer based his opinion on medical records submitted by both the Administration and Shiebler.  A "reasonable mind, reviewing the evidence in the record as a whole, could accept [the Hearing Officer's decision] as adequate to support his conclusion." Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Secretary of Health

& Hum. Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  The Hearing
Officer explained his findings from the medical records in
detail.  The mere existence of evidence to the contrary does not
render the whole decision as without substantial evidence.
Greene, 2012 WL 1248977, at *3.

**VI.   CONCLUSION**

Shiebler's motion to reverse, ECF No. 10, is **DENIED**, and
therefore the Commissioner's motion to affirm, ECF No. 15, is
**GRANTED.**

**SO ORDERED.**

$\underline{\hspace{3cm}}$ /s/ William G. Young $\underline{\hspace{1cm}}$
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[1]

---

[1] This is how my predecessor, Peleg Sprague (D. Mass. 1841-
1865), would sign official documents.  Now that I'm a Senior
District Judge I adopt this format in honor of all the judicial
colleagues, state and federal, with whom I have had the
privilege to serve over the past 46 years.